UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHARIHO REGIONAL SCHOOL DISTRICT | : | |
| | : | |
| v. | : | C.A. No. 09-161S |
| | : | |
| C.P., by his Mother, Mrs. P. | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

**Background**

Before this Court are Cross-Motions for Entry of Judgment (Document Nos. 5 and 7) filed on May 11, 2009 and May 28, 2009. The parties are the Chariho Regional School District ("Chariho") and Mrs. P., on behalf of her minor son C.P. This matter was referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. A hearing was held on June 18, 2009. After reviewing the Administrative Record and Memoranda submitted, listening to the arguments of counsel and considering relevant legal research, I recommend that C.P.'s Motion for Entry of Judgment be GRANTED and Chariho's Motion for Entry of Judgment be DENIED.

**Statement of Facts**

C.P. is a seventeen year old student attending the Alternative Learning Program ("ALP") at Chariho's RYSE (Reaching Youth through Support and Education) School. RYSE contains both a special education program, the clinical day program, and a general education program, the ALP. C.P. has been diagnosed with depression, attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"). C.P. was diagnosed with a learning disability in first grade

and again in middle school. He was taken out of special education upon completion of middle school. However, a plan was developed for C.P. pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, (the "504 Plan[1]") when he entered high school in 2007. The 504 Plan provides that C.P.'s depression and ADHD "substantially affect his ability to learn." (Petitioner's Ex. 2). The 504 Plan did not specify C.P.'s mental or physical impairment but it did note that he was recently hospitalized for depression and that his major life activity of learning was substantially to extremely limited by his impairment. Id. Additionally, C.P. received medical treatment for his depression and related issues on four occasions during his high school years. In March 2007, during his first year of high school, he spent two and one-half weeks in a partial hospitalization program run by South Shore Mental Health, a local behavioral health organization located in Charlestown. Then, in November 2007 and again in December 2007, he was hospitalized on an in-patient basis at Bradley Hospital, a regional psychiatric hospital located in East Providence which specializes in children and adolescents, to deal with his depression, ADHD, anger and rage. Finally, in March 2008, C.P. was hospitalized at Bradley Hospital a third time.

Further, during this period, C.P. was arrested three times while at school and twice while in the community. His arrests at school were for assault, disorderly conduct and possession of a weapon (knife), while his arrests in the community were for possession of marijuana and obstruction of justice. (See Decision of Hearing Officer (March 11, 2009) at 8). He frequently received in and out of school suspensions and "his deportment was a continuing issue." (Id.) The Hearing Officer cited a Teacher Report Form ("TRF"), which was completed by C.P.'s classroom teacher in

---

[1] A 504 Plan is generally intended to remove barriers and/or provide modifications or accommodations to allow equal access to education, i.e., a level playing field, to students with physical and/or mental disabilities. A subset of students with 504 Plans also have an individualized education program ("IEP") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., which is a tailored program of educational supports.

December 2007, as containing "information of interest" to the decision. (Petitioner's Ex. 21). The TRF indicates that C.P.'s classroom teacher observed an abnormal frequency of "thought problems, attention problems, rule-breaking behavior, and problems of an aggressive nature." (Id.) It also indicates that his scores on the "Attention Deficit/Hyperactivity Problems and Oppositional Defiant Problems scales were in the clinical range (above the 97th percentile)." (Id.) The Hearing Officer noted that this TRF was consistent with the reports concerning C.P. issued by Bradley Hospital. Decision at 9. The Hearing Officer also noted that the December 2007 TRF was at odds with a TRF prepared by C.P.'s special education teacher in Chariho that was issued in October 2008. (Petitioner's Ex. 22). That TRF indicated that C.P. was behaving and learning in an average fashion. (Id.)

Following his first hospitalization at Bradley Hospital in November 2007, C.P.'s parents sought a formal referral for special education services. An Evaluation Team convened on November 19, 2007 and accepted the referral for an "Otherwise Health Impaired" ("OHI") disability. (Petitioner's Ex. 9). However, the Team referred C.P. to several screening evaluations and deferred determination of his special education eligibility at that time. (Id.) Before a determination was made, C.P. was hospitalized again in December 2007. Thereafter, C.P.'s parents sought to home school him. (Petitioner's Ex. 11). In May 2008, C.P.'s Evaluation Team determined that he did not qualify for special education services as OHI. Shortly thereafter, C.P.'s parents filed for a due process hearing seeking a determination that C.P. qualified as a child with a disability under the IDEA.

In July 2008, the parties agreed to a temporary order placing C.P. at the RYSE school's clinical day program for a forty-five day period.[2] C.P. was not provided with special education services while enrolled in the clinical day program. His work was sent over from the regular high school and graded by general education teachers. While enrolled in the clinical day program, C.P. was absent for eight of the forty-five days and received seven suspensions and sixteen time outs, and he failed Algebra and English. After his forty-five day trial period ended, his Evaluation Team reconvened. (Respondent's Exs. E and F). There was a disagreement between Chariho and C.P.'s parents, and a due process hearing was scheduled. (Id.) While the due process hearing was pending, C.P. was placed in the ALP. (Id.)

The due process hearing took place over five separate days in late 2008 and early 2009. The Hearing Officer heard testimony in support of C.P.'s position from C.P.'s mother; Dr. Paul Weigle, C.P.'s treating psychiatrist; and Karen Baruffaldi, a therapist who worked with C.P. Together, these witnesses detailed the history of difficulties C.P. experienced since entering high school at Chariho. According to his academic record, C.P. failed Algebra beginning in the 2006-2007 school year and continuing through the 2008-2009 school year. He also had a "demonstrated weakness" in English during those years. (See Decision at 8). An assessment administered by Chariho in late 2007 indicated that C.P.'s math skills were "below grade level expectations and [had] regressed when compared to results from testing completed in May, 2006." (Id.) Moreover, Ms. Baruffaldi testified that C.P. performed below average on the behavior scale while attending the RYSE school. (Id. at

---

[2] The RYSE School is located in a separate building on the campus of the Chariho High School-Middle School campus. The RYSE school hosts two separate programs – a clinical day program and an Alternative Learning Program ("ALP"). The clinical day program provides special education services and clinical services to special education students. The instructors are certified special education teachers. The ALP is a general education program with small classes and a small student-teacher ratio. Students in the ALP can receive counseling only from a school social worker. The teachers in the ALP are general education teachers.

11). Finally, there was extensive testimony concerning C.P.'s arrests and resulting legal matters as well as his struggles with depression, ADHD, ODD, anger and substance abuse.

The Hearing Officer heard testimony in support of Chariho's position from Dr. Michael Vergnani, a Psychologist and Director of Clinical Services at the RYSE School; Nathaniel Edmunds, a Special Education Teacher at the RYSE School; and Carolyn Garlick, Director of the RYSE School. The Hearing Officer found that Dr. Vergnani was not qualified to give an expert opinion concerning C.P. because he only observed him on isolated occasions and "was not sufficiently knowledgeable of [C.P.], nor [C.P.'s] actions at the School to properly form an expert opinion." (Id. at 12). Furthermore, the Hearing Officer found that Dr. Vergnani's failure to document any of his observations of C.P. in writing, undercut his ability to provide expert opinion concerning C.P. Dr. Vergnani testified that C.P. was, in his opinion, task-avoidant and did not need special education. Mr. Edmunds, a Special Education Teacher, testified that he believed that math was a "disfavored" activity and that C.P.'s school absences were contributing to his lack of academic progress. He also testified that he did not believe that C.P. was learning disabled in math. He also opined that C.P. did not need special education services. (Id. at 13). Finally, Ms. Garlick testified that C.P. performed well without special education services and did not need special education instruction. However, on cross-examination, she testified that C.P. could not "handle" the mainstream program at the high school, but could function at the vocational school with the use of support services from the school psychologist. (Transcript ("Tr.") of Jan. 27, 2009 Hearing at pp. 66-67).

On March 11, 2009, the Hearing Officer issued his decision finding that C.P. met the eligibility requirements for special education as a student with a serious emotional disturbance and

other health impairments which adversely affected his educational performance.  The Hearing Officer made six specific findings of fact:

1. The Student has been diagnosed as having a major depressive disorder; and

2. the Student has been diagnosed as having ADHD; and

3. the Student has been diagnosed as having Oppositional Defiant Disorder; and

4. the above disorders have been manifested for a significant period of time becoming more pronounced with time; and

5. the Student's academic performance and his ability to act in a proper manner with teachers and students have been negatively affected by such conditions.

6. the Student is a child with a disability in accordance with 20 U.S.C. Sec. 1401(3)(A)(i) and (ii).

He also found that the testimony, exhibits and facts "clearly support[ed]" his finding, and that C.P.'s emotional disturbance and ADHD "adversely affect" his educational performance. (Decision at 14-15).  Finally, the Hearing Officer concluded that "only with a properly designed and implemented IEP," can Chariho provide a free appropriate public education ("FAPE") to C.P.  (Id. at 15).

**Standard of Review**

A district court, when reviewing an administrative decision under IDEA, is required to give "due deference" to a hearing officer's findings of fact. Abrahamson v. Hershman, 701 F.2d 223, 231 (1st Cir. 1983).  However, a district court reviews a hearing officer's rulings of law under the IDEA framework *de novo*.  See Ross v. Framingham Sch. Comm., 44 F. Supp. 2d 104, 111-12 (D. Mass.

1999), aff'd 229 F.3d 1133 (1st Cir. 2000).  Therefore, this Court should disregard any rulings not in accordance with applicable statutes and precedents.  See id. (citing Abrahamson, 701 F.2d at 231).

The parties have asked the court to decide the case on the basis of the administrative record by way of cross-motions for entry of judgment.  Hunger v. Leininger, 15 F.3d 664, 669 (7th Cir. 1994).  This is not to be confused with the typical pre-trial summary judgment procedure in which the court must consider the facts in the light most favorable to the non-moving party.  Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997).  Rather, under the IDEA, "[t]he party challenging the outcome of the...administrative decision [here, the School District] bears the burden of proof." Id.

**Analysis**

Under the IDEA, public schools are required to provide a FAPE to children with disabilities. 20 U.S.C. § 1412(a)(1).  A FAPE encompasses special education and related services, 20 U.S.C. § 1401(9), including "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability...." 20 U.S.C. § 1401(29).  In order to be eligible for special education services, a child must qualify as a "child with a disability."  Under 34 C.F.R. § 300.8(a)(1) and R.I. Reg. § 300.8(a)(1), a child with a disability means "a child, aged 3 to 21, evaluated in accordance with §§ 300.304 through 300.311 as having...a serious emotional disturbance...[or]...an other health impairment...and who, by reason thereof, needs special education and related services." (emphasis added).

The test for determining if a child qualifies as a "child with a disability" can be broken into two parts: first, whether the child has a disability identified in the statute; and second, whether the child needs special education by reason of that disability.  In this case, there is no dispute that C.P.

satisfies the first prong of the test. Chariho concedes that C.P. has a disability. See Document No. 9 at 4 ("...Chariho does not dispute that C.P. has a disability in the form of depression and attention deficit hyperactivity disorder or that C.P. needs counseling or that C.P. needs environmental changes..."). Instead, Chariho only challenges the Hearing Officer's conclusion that C.P. needs special education by reason of his disabilities, and thus is eligible for special education services.

As a preliminary matter, Chariho contends that the Hearing Officer applied an incorrect legal standard and that his decision should be vacated. (Document No. 9 at 5-7). Although the Hearing Officer did not thoroughly and precisely summarize the applicable law in his decision, the Court finds that the Hearing Officer appropriately considered and weighed the correct factors in examining C.P.'s eligibility for special education. The Hearing Officer found that the "two prong test under 20 U.S.C. 1401(3)(A)(i) and (ii) have been met in this case." (Decision at 15). Chariho contends that the Hearing Officer misstated and effectively rewrote the applicable law. Chariho's argument borders on hyperbole. Chariho posits that the applicable regulations create a three-part test for determining special education eligibility which examines if (1) the student has a disability; (2) the student needs special education; and (3) the student's disability causes the need for special education. (Document No. 9 at 5). Chariho contends that the Hearing Officer gutted the test and simply equated the existence of a disability with the need for special education.[3] Chariho's argument misses mark. While the Hearing Officer could have more precisely worded his conclusions of law, he found that C.P. met the test under 20 U.S.C. § 1401(3)(A)(i) and (ii) which defines a "child with a disability" as one with an enumerated impairment who, by reason thereof,

---

[3] Chariho attempts to support its argument by pointing to the example of a vision-impaired child who has a disability but merely needs to wear glasses in school and does not need special education. While this example is accurate as far as it goes, it represents the simplest of cases and sheds no light on the complicated record presented to the Hearing Officer in this case.

needs special education. Regardless of whether you call it a two- or three-part test, it is apparent from the Hearing Officer's decision that he understood and applied the correct legal test.

Chariho has also shown no error in the Hearing Officer's findings of fact and, since they are supported by the record, they are entitled to deference. The Hearing Officer considered C.P.'s behavioral, social and educational background in evaluating whether he is entitled to receive special education services under the IDEA. Section 300.306(c)(1)(i), 34 C.F.R., provides that the educational needs of a child can be ascertained by examining "a variety of sources, including aptitude and achievement tests, parent input, and teacher recommendations, as well as information about the child's physical condition, social or cultural background, and adaptive behavior...." See also Alvin Indep. Sch. Dist. v. A.D., 503 F.3d 378, 383 (5th Cir. 2007) (noting that "the district court properly considered the unique facts and circumstances" of the case in evaluating the child's "need" for special education). In the present case, the Administrative Record contains sufficient factual support for the Hearing Officer's conclusion that C.P.'s academic, social and behavioral progress at school demonstrated a need for special education. Chariho relies on the testimony of its three witnesses, all educators employed by Chariho, to support its claim that the Hearing Officer erred in finding that C.P. needs special education. In other words, it claims that the Hearing Officer erred by not crediting its witnesses. The Hearing Officer cited this testimony and was obviously familiar with it but he also cited other competent testimony and other evidence in support of C.P.'s need for special education. C.P.'s behavioral issues, such as his acting out in class, his suspensions, his failure to pay attention in class and his arrests are chronicled in detail in the record and provide competent support for the Hearing Officer's finding that C.P. needs special education. Likewise, there are documented academic failings, such as C.P.'s failure in math and his poor performance in

English and several other subjects, which also provide competent support for the Hearing Officer's decision that C.P. needs special education.  The Hearing Officer obviously considered the entire body of evidence as a whole and reasonably found that the totality of the evidence supported the conclusion that C.P. was eligible for special education services.

It is clear to this Court that the Hearing Officer weighed the competing testimony of the witnesses and concluded that the testimony submitted on behalf of C.P. was more credible and supportive of his need for special education than the testimony of the witnesses put forth by Chariho. The Hearing Officer was presented with a close case in which neither side made a particularly compelling showing. The Hearing Officer thoroughly discussed and evaluated the evidence presented by both sides and, as to Chariho's witnesses, articulated reasonable and supported reasons for discounting the weight of their testimony.  For instance, the Hearing Officer was not impressed with Dr. Vergnani's testimony because he did not document his observations of C.P. and did not prepare any written reports or evaluations.  He noted that Mr. Edmunds did not teach C.P., but only helped him with work sent over from the regular education classes, and had not read the reports from C.P.'s treatment providers – Bradley Hospital and Family Service.  Finally, the Hearing Officer pointed out that Ms. Garlick conceded on cross-examination that C.P. could not function in a regular education classroom.

Although the parties presented conflicting evidence to the Hearing Officer, it is undisputed that C.P.'s educational and behavioral performance at Chariho has been dismal.  It is also undisputed that he has been diagnosed with mental impairments which constitute disabilities under the IDEA. The dispute centers on his need for special education.  C.P.'s mother (supported by his treating Psychiatrist and Therapist) contends that C.P. needs special education services due to his disabilities.

Chariho counters that C.P. has not shown that he needs special education by reason of his disabilities and that he is socially maladjusted, task avoidant, chooses not to behave in school and exacerbates his problems by using illegal drugs. However, as discussed above, the Hearing Officer found that C.P. proved that he needs special education by reason of his disabilities and appropriately weighed and considered conflicting evidence in making that finding. This is a close case, and reasonable minds could differ on the outcome. However, that does not give the Court license to step into the Hearing Officer's shoes and conduct a de novo review. This Court is confined to a cold administrative record and unable to observe and evaluate first hand the witnesses' testimony. However, reviewing the record as a whole, including the hearing transcripts and the numerous medical and academic exhibits, it contains sufficient competent evidence to support the Hearing Officer's conclusion.

I find the Hearing Officer's findings of fact to be reasonable and supported by the record. Chariho has shown no reversible error in the Hearing Officer's conclusion that C.P. "needs special education by reason of his disability" and thus is a "child with a disability" as defined by the IDEA.

**Conclusion**

For the reasons stated, I recommend that C.P.'s Motion for Judgment (Document No. 7) be GRANTED and Chariho's Motion for Judgment (Document No. 5) be DENIED and that the District Court conclude that the Hearing Officer's determination is legally correct and adequately supported by the administrative record and should be AFFIRMED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the

District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
October 26, 2009